NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 20-354

PATRICK WISE GRAY

VERSUS

NEW ENGLAND COLLEGE, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20171313
HONORABLE JULES DAVIS EDWARDS, DISTRICT JUDGE

**********

D. KENT SAVOIE
JUDGE

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and D. Kent Savoie,
Judges.


AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED.


EZELL, J., concurs.

**Patrick Wise Gray**
**Johnson Gray McNamara, LLC**
**P. O. Box 51165**
**Lafayette, LA 70505**
**(337) 412-6003**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Patrick Wise Gray**

**Andrew J. Baer**
**Deutsch Kerrigan LLP**
**755 Magazine St**
**New Orleans, LA 70130**
**(504) 581-5141**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **New England College**
    **Mark Mitch**
    **Dan Freese**

**Jared A. Davidson**
**Taylor, Wllons, Politz & Duhe, APLC**
**1515 Poydras St, Ste 1900**
**New Orleans, LA 70112**
**(504) 525-9888**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Rasier, LLC**
    **Uber Technologies, Inc.**

**SAVOIE, Judge.**

Plaintiff, Patrick Gray ("Mr. Gray"), appeals a judgment sustaining Uber Technologies, Inc.'s ("Uber's") and Rasier, LLC's ("Rasier's") exceptions of no cause of action and dismissing Mr. Gray's claims against them with prejudice. For the following reasons, we affirm the trial court's judgment with respect Rasier, reverse the trial court's ruling judgment in favor of Uber, and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 9, 2017, Mr. Gray filed a Petition alleging that on the evening of March 10, 2016, he hired an Uber driver to drive him home and inadvertently left behind a large sum of money in the Uber driver's vehicle. Mr. Gray further alleged that later that evening, the same Uber driver transported several New England College ("NEC") students to a nightclub and that one of the students, Anthony Boame ("Mr. Boame"), took Mr. Gray's money after both Mr. Boame and the Uber driver acknowledged to each other that the money did not belong to them. Mr. Gray further alleged that he reported the incident to the police. Mr. Gray named as Defendants Uber and Mr. Boame, as well as Mark Mitch and Dan Freese, who are alleged employees of NEC.

Mr. Gray additionally asserted in his Petition that "Uber failed its duty to train its drivers to protect Uber's passengers and their property[,]" and "in its duty to protect plaintiff and its possessions, in particular instruct its drivers that the possession of its passengers should be protected and secured." He also asserted negligence claims against the other Defendants. Mr. Gray's Petition seeks a judgment "against the Defendants personally and/or in solido for the total

monetary and other losses or damages caused by Defendants, together with legal interest and costs."

On October 22, 2018, the trial court signed a Judgment on Rules sustaining Uber's exception of no cause of action and giving Mr. Gray thirty days to amend his Petition.[1]

On November 26, 2018, Mr. Gray filed a First Amended and Supplemental Petition wherein he added as additional Defendants NEC and Rasier, who is an alleged subsidiary of Uber. Mr. Gray's First Amended and Supplemental Petition also provides additional factual detail concerning the March 10, 2016 incident, stating that on that evening he and his wife had dinner with friends at a restaurant in downtown Lafayette and decided to hire an Uber driver to bring then home, rather than driving their own vehicle. According to Mr. Gray, he had $50,000.00 in a black pouch in his vehicle, and, rather than leaving it unattended overnight, he brought it with him in the Uber vehicle, but inadvertently left it behind. Mr. Gray's First Amended and Supplemental Petition further states as follows:

6.

After returning home and immediately upon recalling that the money had been left in the Uber, Plaintiff and his wife contacted the Uber employee and asked him to search for the money. At some point the Uber employee acknowledged that he had given a ride to students from New England College whom he had knowingly allowed to take the money. One of the students while exiting the vehicle, acknowledged that the money was not his and asked the driver if it belonged to him. The driver responded no, and allowed the student to misappropriate the money.

7.

Inasmuch as Uber was a depositary/bailee and common carrier, Uber owed the highest degree of care to protect Plaintiff's person and

---

[1] We note that the parties designated only certain portions of the record for purposes of this appeal and that Defendants' exceptions do not appear in the record.

property. That duty would include protecting it from theft and allowing it to be taken from the Uber vehicle by a third party.

. . . .

9.

It is common knowledge that items are frequently left in taxis . . . and other common carriers. . . . and appropriation or theft of lost property is a known risk that every common carrier has a duty to protect against. Uber has a policy for dealing with "lost" property for the benefit of its passengers. That policy, industry custom (and common sense) should have protected Plaintiff's property under these facts. All carriers have such policies and duties which do not end until the property is secured and returned . . . .

. . . .

11.

Here, the driver was asked if the pouch containing the money belonged to the driver. This question would have informed any reasonable driver, and invariably one who has been properly trained, to retrieve the lost property as it was not owned by the current passenger and had to be the property of a prior passenger. The driver was negligent both inherently and through improper hiring and training practices by Uber.

. . . .

14.

Immediately after learning that the property had been taken from the Uber, the Plaintiff contacted the Lafayette Police. . . . [A]n investigation into what the police termed "theft of lost property" was begun by the police. A copy of the initial police report and NEC investigative file are attached as Exhibit B. . . .

15.

As indicated, the police investigation revealed that the money was taken by NEC students and based upon the Uber employee's description of the person Uber allowed to commit the crime, Lafayette City Police identified Anthony Boame, NEC was contacted and ultimately questioned Anthony Boame and others. NEC was described [as] uncooperative in the investigation.

## 16.

. . . . Uber's sole revenue source is from charges that it arranges for its drivers. Uber charges customers for the transportation services it provides, without consulting the drivers as to rates. Uber selects routes. . . . Uber controls the customer contact information. Uber requires that drivers accept ride requests while working . . . . Uber dictates how drivers dress, when and how to contact passengers, what radio stations they can play . . . . Uber retains the right to terminate drivers at will. . . . Accordingly, Uber's liable under the doctrine of respondent superior for the actions of its drivers.

. . . .

## 20.

The incident was reported to the police, and based upon the information provided by the police to Plaintiff, Boame denied that he took the money. NEC's representatives were informed of the incident, and that NEC students were involved. NEC asked Boame and the students if they knew anything about the money. They denied knowledge of it. . . .

The documents contained in Exhibit B[2], attached to Mr. Gray's First Amended and Supplemental Petition, each contain slightly differing statements concerning the interaction between the NEC students and the Uber driver. The Lafayette Police Department report states that, according to the Uber driver, as the group of students was exiting his vehicle, a male

handed him the black bag and asked [the driver] "is this yours[?]" [The driver] stated he replied "no, is it yours[?]" [The driver] then stated the black male stated "I think it is" and exited the vehicle with the bag in hand.

. . . .

It should also be noted that the victim stated [the driver] denied ever seeing the bag when he called and asked him to look inside the vehicle for it. . . . [The driver] later told this officer he observed a black male exiting the vehicle with the bag in hand. . . .

---

[2] The parties agreed that the factual allegations stated in the documents attached as Exhibit B were incorporated by reference into the First Amended and Supplemental Petition.

Exhibit B also contains a copy of a purported report prepared by Bill Christiano with NEC. It states that Detective Perry with the Lafayette Police Department had contacted NEC regarding the incident and that Detective Perry "narrated the following[:]"

> On Thursday, 03-10-16, sometime in the evening, an UBER driver picked up a fare – man and woman – and transported them to a location in Lafayette, Louisiana.
>
> Later that same night, around 2200 hrs, the same UBER driver picked up five black males and two black females at a Lafayette residence. . . . The fares, whom Det. Perry assumed to be NEC students, were transported to a local club. . . . As the students were leaving the vehicle, one of the students. . . showed the UBER driver a bag found in the back seat of the vehicle and asked if it belonged to him. The driver said it didn't. The student then said it must belong to someone in his group and left the vehicle with the bag in his possession.
>
> . . . .
>
> Det. Perry told me that, based on what the UBER driver said, the NEC students kept the bag of money found in the vehicle.

Mr. Christiano's report further states that the NEC students involved all denied the existence of the black bag and knew nothing about it. In addition, Exhibit B contains a purported copy of email correspondence from Mark Mitch, an NEC employee, to Mr. Christiano, stating that he talked to the students individually and as a group and "none of them had any inkling of a response about finding any kind of bag in the car. My sense is that none of the students would ever consider keeping a bag found in a car regardless of the contents."

In addition, a copy of a Criminal Subpoena Duces Tecum to New England College Campus Safety's Director, Bill Christiano, included with Exhibit B states:

> contact was made with the Uber diver who advised he had picked up several college students . . . after he transported the victim. He advised a black male . . . had shown him the black pouch asking if it was his. The driver advised he thought it may be one of the

female[']s in the vehicle with the male. The male then looked in the pouch and said it must be and left with the pouch.

I went to [the address of where the Uber driver picked up the students] and made contact with the manager who informed me that Professor Mark Mitch had rent[ed] the apartments for himself and his students from New England College. . . . The school refused to provide [Anthony Boame's] information.

On December 16, 2010, the trial court rendered a Judgment on Rules sustaining Uber's and Rasier's exceptions of no cause action and dismissed Mr. Gray's claims against them. The Judgment states:

> This court finds that the plaintiff's First Amended and Supplemental Petition fails to allege facts that suggest UTI's [Uber's] alleged driver knew one of its passengers intended to steal from another of its passengers; fails to allege that Uber Technologies, Inc. had a duty to protect plaintiff from the theft of lost property when a criminal act was conducted by another passenger; fails to allege facts to support the existence of a contract of deposit; and, fails to allege facts that support the conclusion that Rasier, LLC engaged in tortious conduct.

Similarly, the trial judge stated in his oral reasons for ruling:

> The plaintiff's first amended and supplemental petition alleges no facts to suggest . . . that UTI's driver knew one of its passengers intended to steal from another one its passengers. Thus, UTI did not have a duty to protect the plaintiff from theft of lost property when that criminal act was conducted by another passenger. Secondly, this petition alleges no facts that supports the existence of a contract of deposit; thirdly, alleges no facts that supports [sic] the conclusion that Rasier, LLC engaged in tortious conduct.

Mr. Gray appeals the trial court's judgment and asserts the following as assignments of error:

1. The trial court erred when it misapplied the presumption in favor of maintaining a cause of action.

2. The trial court committed error when it found that under no set of circumstances arising from the facts could the Uber driver be found to owe a duty to protect the property of its riders.

3. The trial court committed error when it concluded that the Uber driver could not have acted to determine who the money actually

6

belonged to when he knew, in fact, that the person who was in possession of the money was not the owner.

4. The trial court committed error when it concluded that there was a conflict in the pleadings because a version of the events in an attachment created confusion about ownership of money. Under the law, if another version of the events is possible under the pleadings, the no cause of action exception must be overruled.

5. The trial court effectively weighed evidence rather than giving deference to the pleadings.

## ANALYSIS

We first note that Mr. Gray's brief to this court fails to address the trial court's ruling with respect to Defendant Rasier, and no appellee brief was filed by Rasier. We therefore deem this issue as abandoned. Uniform Rules—Courts of Appeal Rule 2-12.4. Accordingly, we affirm the trial court's ruling with respect to Defendant Rasier.

With respect to Mr. Gray's appeal of the judgment in favor of Defendant Uber, we first note the Louisiana Supreme Court's discussion of peremptory exceptions of no cause of action in *City of New Orleans v. Board of Directors of Louisiana State Museum*, 98-1170, pp. 9-10 (La. 3/2/99), 739 So.2d 748, 755-56 (internal citations omitted):

> The purpose of the peremptory exception of no cause of action is to determine the sufficiency in law of the petition. The burden of showing that the plaintiff has stated no cause of action is upon the exceptor. The public policy behind the burden is to afford the party his day in court to present his evidence. The exception is triable on the face of the papers, and for the purpose of determining the issues raised by the exception, the court must presume that all well-pleaded facts in the petition are true. All reasonable inferences are made in favor of the nonmoving party in determining whether the law affords any remedy to the plaintiff. A court of appeal reviews *de novo* a lower court's ruling sustaining an exception of no cause of action because the exception raises a question of law and because the lower court's decision is generally based only on the sufficiency of the petition. The question is whether, in the light most favorable to the plaintiff, the petition states any valid cause of action for relief.

. . . .

> An exception of no cause of action is likely to be granted only in the unusual case in which the plaintiff includes allegations that show on the face of the petition that there is some insurmountable bar to relief. Thus, dismissal is justified only when the allegations of the petition itself clearly show that the plaintiff does not have a cause of action, or when its allegations show the existence of an affirmative defense that appears clearly on the face of the pleadings. A court appropriately sustains the peremptory exception of no cause of action only when, conceding the correctness of the well-pleaded facts, the plaintiff has not stated a claim for which he can receive legal remedy under the applicable substantive law.

Taking the well-pleaded facts in Mr. Gray's First Amended and Supplemental Petition as true, and in considering the petition in the light most favorable to Mr. Gray, we find that Mr. Gray has stated a cause of action against Uber. While the factual allegations differ to some extent regarding the specific interactions between the Uber driver and Mr. Boame, the facts, as alleged, indicate that the Uber driver knew that the black pouch alleged to contain Mr. Gray's money did not belong to the passenger (Mr. Boame) who ultimately left the Uber vehicle with the pouch. The well-pleaded facts reasonably support a claim that the Uber driver was negligent in allowing Mr. Boame to take Mr. Gray's black pouch under the circumstances and that Uber is liable for the driver's negligence.

Uber suggests on appeal that its exception should be maintained because it cannot be liable for the criminal actions of its passengers when there are no allegations that the criminal actions were foreseeable. It also argues that it owed no duty "to prevent the theft of Plaintiff's pouch." It appears from the trial court's judgment and oral reasons for ruling that it agreed with this argument.

However, we note that the issue presented by Mr. Gray's petition is whether, under the circumstances, *the Uber driver* was negligent when he allowed Mr. Boame to leave the vehicle with property that did not belong to Mr. Boame. We

further find no support for Uber's suggestion that, under no circumstances can Uber and/or Uber drivers be imposed with a duty to protect property that its customers leave behind in Uber vehicles. Rather, Mr. Gray's First Amended and Supplemental Petition sufficiently states facts supporting a negligence claim against Uber. Whether, and to what extent, Uber and/or the Uber driver were actually negligent under the circumstances should be determined on the merits, not in connection with an exception of no cause of action. Therefore, we reverse the trial court's judgment sustaining Uber's exception of no cause of action and dismissing Mr. Gray's claims against it and remand the matter for further proceedings.

## DECREE

For the reasons stated above, we affirm the trial court's judgment in favor of Defendant Rasier, reverse the trial court's judgment granting Uber's exception of no cause of action, and remand the matter for further proceedings. Costs of this appeal are assessed to Defendant Uber.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Rule 2–16.3, Uniform Rules, Courts of Appeal.

9